**12**

Glen ROLISON, Jr., Petitioner,

v.

Joseph M. RYAN, et al., Respondents.

Civ. No. 84–1302.

United States District Court,
M.D. Pennsylvania.

June 19, 1985.

Glen Rolison, Jr., pro se.

Raymond L. Hamill, Dist. Atty. of Wayne County, Honesdale, Pa., for respondents.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

We have received a Magistrate's Report in the above-captioned matter. The Report includes a recommendation as to the proper

disposition of this case. Petitioner has excepted to the Magistrate's recommendation. We have considered these exceptions, the Report itself, and the case file in reaching our decision herein.

This is a *habeas corpus* brought pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his 1974 convictions on charges of murder and conspiracy to commit murder in the Wayne County Court of Common Pleas. Petitioner cites four grounds herein which support his claim that his conviction should be vacated. They are: (1) the failure of the trial court to grant a change of venue due to prejudicial pretrial publicity; (2) the trial court's refusal to permit cross-examination of Pennsylvania State Trooper James Timko regarding a statement made by one of Rolison's co-conspirators, Cathy Brooks; (3) the trial court's refusal to enforce a subpoena duces tecum served by Rolison on Cathy Brooks; and (4) the trial court's decision to hear Cathy Brooks' testimony over a defense objection to her competency. We shall consider these grounds seriatim.

 Petitioner contends that his motion for change of venue should have been granted because the murder trial of his co-defendant, which was concluded a mere two weeks before the start of his trial, had resulted in such extensive adverse publicity as to taint the juror pool in rural, sparsely populated Wayne County. He relies on *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), for the proposition that

> ... Any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality. *Id.* at 726, 83 S.Ct. at 1419.

However, the utility of *Rideau* to Petitioner is greatly diminished when one considers that the jury in that case included three individuals who freely admitted that they had seen a televised interview of the defendant admitting his guilt and also included two deputy sheriffs who had worked in the investigation of the crime. While this Court does not doubt the veracity of Petitioner's allegation that there was a great deal of prejudicial pretrial publicity, this alone does not warrant a new trial. More recent precedent dictates that a defendant should be granted a change of venue only if he can show actual prejudice in the empaneling of a jury from the *voir dire* transcript or other objective indicia. *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). The *Murphy* Court cited *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) for a concept which we believe is still the law regarding when a change of venue can be had:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Irvin*, supra, at 723, 81 S.Ct. at 1643.

Since there is no allegation that any of the 14 jurors seated for Petitioner's trial had any fixed opinion of his guilt, and since only 28% of the veniremen, all of whom were excused, indicated a fixed opinion of guilt, we cannot find that Petitioner here has demonstrated the presence of actual prejudice as required by *Murphy*, supra.[1]

 Petitioner's second claim centers on the trial court's refusal to allow defense counsel to cross-examine Trooper Timko of the Pennsylvania State Police regarding a statement given him by Cathy Brooks. We do not think this refusal was error. As the Magistrate points out, Miss Brooks herself had previously and, we may say, repetitively been cross-examined as to the content of this statement and the inconsistencies be-

---

1. See also *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), where the Supreme Court upheld a Petitioner's conviction in the face of a denied motion for change of venue in a situation where 77% of the veniremen admitted they would carry a fixed opinion into the box.

tween it and her direct testimony had been forcefully brought home to the jurors. Moreover, we are impressed with the fact that the trial judge was more than fair to our Petitioner in his rulings as to the defense counsel's technique of cross-examination. We agree with the Pennsylvania Supreme Court that the attempted cross-examination was beyond the scope of Timko's direct testimony and, thus, improper. See *Commonwealth v. Rolison*, 473 Pa. 261, 271, 374 A.2d 509 (1977). Therefore, this aspect of Petitioner's claim will not support the grant of a writ of *habeas corpus.*

■■■ The third aspect of Petitioner's claim, that which involves an allegation that the trial court erred in refusing to enforce a subpoena *duces tecum* served by Petitioner on Cathy Brooks to produce letters sent her by another co-defendant, Dave Lamberton, is similarly without merit. Petitioner cites *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) in support of his claim that the failure to enforce the subpoena constitutes error significant enough to support reversal of Rolison's conviction. However, the thrust of *Brady*, supra, is to require prosecutors to relinquish any potentially exculpatory material to the defense. Since there is no inkling that the prosecution in this case failed to divulge anything to the defense which it had any duty to divulge, we fail to see the relevance of *Brady* to this case. We agree with the Magistrate that Petitioner's intent is actually to challenge an evidentiary ruling by the trial court. Because such rulings are within the sound discretion of such courts and are not of constitutional proportion unless they deprive the accused of a fundamentally fair trial, we cannot find that the failure to subpoena these letters, which would have been used to attack Miss Brooks' already dubious credibility, rendered the trial fundamentally unfair. Going further, the introduction of these letters would have been allowed had defense counsel satisfied the trial court of their relevance—something defense counsel was unable to do.[2] We

2. See trial transcript at pages 72, 73, 74.

find, therefore, that the trial court acted properly in refusing to enforce the subpoena.

■■■ Petitioner's last claim is that Miss Brooks should not have been allowed to testify at all until a separate hearing had been held to determine her competency. We are impressed by the fact that the trial judge had had ample opportunity to observe Miss Brooks before the Rolison trial. She had testified before him several weeks before in a related trial and he had taken her own guilty plea after satisfying himself that she knowingly, intelligently, and voluntarily was waiving her right to trial. Moreover, he had read hospital records and the report of a court-appointed psychiatrist which, taken together, had convinced him of her competency. Our review of her testimony does nothing to weaken our conviction that the trial judge's decision to allow her to take the stand was correct. Her testimony was, if not grammatically elegant, responsive, lucid and to the point. Therefore, since the competency of a witness is a matter which normally addresses itself to the trial court, which has the unique opportunity to observe the demeanor and expression of the witness, we are loathe to second-guess the trial judge here. See *U.S. v. Hicks*, 389 F.2d 49 (3rd Cir. 1968).

In summation, we find that none of the grounds relied upon by the Petitioner herein compels a conclusion that his conviction should be disturbed. This Court, therefore, adopts the Magistrate's Report as its own opinion in this matter and issues the following.

### ORDER

AND NOW, this 19th day of June, 1985, IT IS ORDERED as follows:

1. Petitioner's application for a writ of *habeas corpus* is denied.

2. Judgment is hereby entered in Respondents' favor and the Clerk of Courts is directed to close this case.