## PEROVICH v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE THIRD DIVISION OF THE TERRITORY OF ALASKA.

No. 405. Submitted January 29, 1907.—Decided March 11, 1907.

While in this case there was no witness to the homicide and the identification of the body found was not perfect, owing to its condition caused by its having been partially burned, yet as the circumstantial evidence was clearly enough to warrant the jury in finding that the body was that of the person alleged to have been murdered and that he had been killed by defendant, the trial court would not have been justified in withdrawing the case from the jury, but properly overruled a motion to instruct a verdict of not guilty for lack of proof of the *corpus delicti*.

In the absence of positive proof, but where there is circumstantial evidence of the *corpus delicti*, it is not error to submit to the jury the question of defendant's guilt with the instruction that the circumstantial evidence

must be such as to satisfy the jury beyond a reasonable doubt that the *corpus delicti* has been established.

The testimony of a marshal as to conversations between him and the defendant charged with murder which were voluntary, and not induced by duress, intimidation or other improper influences, are admissible.

Whether in a criminal trial the court interpreter should be appointed is a matter largely resting in the discretion of the court, and its refusal so to do is not an error where it does not appear that the discretion was in any way abused.

The facts are stated in the opinion.

There was no appearance or brief filed for plaintiff in error.

*Mr. Assistant Attorney General Cooley,* for defendant in error:

The orderly trial of criminal cases would be impossible if the rule of practice contended for in the defendant's first exception were adopted. It is settled law that exceptions to the charge should be taken before the jury retires, in order that the court may correct any error that may have been made. *Norman* v. *United States,* 20 App. D. C. 494.

The court properly refused, after the Government had rested its case, to instruct the jury to bring in a verdict of not guilty because the *corpus delicti* had not been proved; because the evidence was insufficient; because the evidence in no way connected the defendant with the death of Jacob Jaconi, and for other reasons, is assigned for error. This motion was made after the Government rested its case. It was then denied and an exception allowed. The defense then put in its evidence and the motion was not subsequently renewed.

When, after such a motion, the defendant introduces testimony, an exception to the action of the court in refusing to direct a verdict is waived. *Union Pacific R. R.* v. *Daniels,* 152 U. S. 684, and cases cited; *Runkle* v. *Burnham,* 153 U. S. 216, and *Hansen* v. *Boyd,* 161 U. S. 397.

The grounds upon which the request to strike out the conversations with the deputy marshal was based, were not stated. The motion, therefore, was properly overruled. *Camden* v. *Doremus,* 3 How. 515; *United States* v. *McMasters,*

.4 Wall. 680; *Burton* v. *Driggs*, 20 Wall. 125; *Toplitz* v. *Hedden*, 146 U. S. 252:

As no objection was taken to the ruling of the court sustaining the objection of the district attorney to the appointment of an interpreter, and as it will be seen, by reference to the defendant's testimony that an interpreter was unnecessary, there was no error. The defendant evidently understood the questions that were asked him and answered them intelligently. Moreover, whether or not the appointment of an interpreter is necessary is within the sound discretion of the trial court. *Schall* v. *Elisner*, 58 Georgia, 190; *State* v. *Severson*, 78 Iowa, 653.

It is not the law that the *corpus delicti* "must be distinctly proved, either by direct evidence of the fact or by inspection of the body," because that would eliminate proof of the *corpus delicti* by circumstantial evidence. *Commonwealth* v. *Webster*, 5 Cush. 295; *State* v. *Williams*, 7 Jones (N. C.), 446.

Moreover, the defendant was not entitled to this instruction in the precise terms prayed, and the court properly refused it. *Catts* v. *Phalen*, 2 How. 376; *Robinson* v. *Parker*, 11 App. D. C. 132.

This prayer was also fully covered in part of the court's charge to the jury.

And as the law was there clearly stated to the jury, it was not error to refuse the instruction. *Coffin* v. *United States*, 162 U. S. 664; *Grand Trunk R. R. Co.* v. *Ives*, 144 U. S. 408; *Erie Ry.* v. *Winter*, 143 U. S. 60–74.

The instruction as to reasonable doubt complained of in the eleventh assignment of error is taken verbatim from the charge of Chief Justice Shaw to the jury in *Commonwealth* v. *Webster*, 5 Cush. 320, and is cited with approval in *Miles* v. *United States*, 103 U. S. 312.

MR. JUSTICE BREWER delivered the opinion of the court.

On July 17, 1905, Vuko Perovich, now plaintiff in error, was indicted in the United States District Court of Alaska,

Third Division, for the murder of Jacob Jaconi. The trial, on August 5, 1905, resulted in à verdict of "guilty of murder in the first degree, and that he suffer death." Motions for a new trial and arrest of judgment having been overruled, he was, on September 15, 1905, sentenced to be hanged. To review that judgment this writ of error was sued out. The record was filed in this court on September 24, 1906, and on application the case was advanced for hearing on January 21, 1907. No counsel appeared for plaintiff in error and no brief was or has been filed in his behalf. The case was submitted by the Government on its brief. Although unaided by counsel for plaintiff in error, we have carefully examined the record and considered the assignments of error.

The testimony in the case was circumstantial. No witness saw the killing. Indeed, the first and principal question is whether there was a homicide. Jaconi was a fisherman, living alone in a log cabin covered by a tent, about midway between Fairbanks and Chena, a distance of about four miles from each place. On October 28, 1904, the last time he was seen alive, he was at Fairbanks between 1 and 2 o'clock in the afternoon, and had in his possession several nuggets, a Yukon gold ring, a gold chain watch charm and some money, part of which he deposited in a bank. In the early morning of October 29 the dogs of the deceased were heard barking, and two shots from a gun were heard in the direction of his cabin. On that day about noon one who had been the partner óf Jaconi arrived at his camp and found the cabin in which the deceased had lived partially destroyed by fire and the fire still burning. In the rear where the bunk had been he saw the back part of à head, a leg bone and the trunk of a man. The head was sunken on the chest. While the cabin was not totally destroyed, it was burned more towards the back where the bunk had been, and the ground in the vicinity of the bunk was saturated with oil. It appeared that Jaconi had in his cabin about one and one-half gallons of olive oil. On that day or the next several witnesses were at the cabin and saw

the skull and the other parts of the skeleton, still smoking, and the bones so burned that they crumbled to pieces when touched. Some two weeks before the fire the defendant had said to a witness that he was broke but knew where he could get some money if he had a partner to go with him, as there was a man who lived about five miles from Chena who had $500, a watch and chain, a ring and a gun. On October 15, he was at the cabin of Jaconi about daylight. At that time he said to the former partner of Jaconi, when asked what he wanted, that he was travelling and looking for a job. On October 20, defendant and a witness went to Chena and on their way stopped at the cabin of Jaconi. After leaving defendant told witness that he had been there several times before, and that the deceased had a roll of money, and that he would lick him with an ax some day and throw him in the water, or that he would make a fire and burn everything up. On October 28, the day on which Jaconi was last seen, the defendant was at Fairbanks, and said he was going to the cabin of one of his countrymen to see if he could find anything in it. On October 29, between half past 3 and 4 o'clock in the afternoon, he arrived at a camp about twenty miles from Chena. He had a rifle and a canvas bag in his possession, a Yukon ring and a gold watch and chain. He made different and contradictory statements to witnesses about the watch. On November 5 he was arrested, having in his possession $50 and a gold watch. He said that he traded a nugget chain with two men for a sack of clothes and the watch. Later a sack of clothes was found where he had left it. He said that he and his partner had made the chain, and that he had bought his partner's interest in it. His partner testified that they owned the nugget chain, and that it had never been out of his possession after it was made. Several of these articles and others found in possession of the defendant were identified as the property of Jaconi. Other circumstances of a similar nature were also shown in evidence.

It is assigned for error that the court overruled a motion

to instruct the jury to bring in a verdict of not guilty for the reason that the *corpus delicti* had not been proved. This motion was made after the plaintiff had rested, and upon its being overruled the defendant proceeded to offer testimony. The motion was not thereafter renewed. Without resting upon the proposition that introducing testimony after such a motion has been overruled is a waiver of any exception to the action of the court (*Union Pacific Railway* v. *Daniels*, 152 U. S. 684; *Runkle* v. *Burnham*, 153 U. S. 216; *Hansen* v. *Boyd*, 161 U. S. 397), we are of the opinion that neither at that time nor at the close of all the testimony would the court have been justified in withdrawing the case from the jury. While it is true there was no witness to the homicide and the identification of the body found in the cabin was not perfect owing to its condition caused by fire, yet, taking all the circumstances together, there was clearly enough to warrant the jury in finding that the partially burned body was that of Jaconi and that he had been killed by the defendant. Upon this question the case of *Commonwealth* v. *Williams*, 171 Massachusetts, 461, is closely in point and instructive. While the particular facts are not identical, the character and scope of the testimony are substantially the same.

Again, it is alleged that there was error in overruling a motion made by defendant to strike out all the testimony given by a deputy marshal of conversations between him and the defendant. As these conversations were not induced by duress, intimidation or other improper influences, but were perfectly voluntary, there is no reason why they should not have been received.

Other matters referred to in the assignment of errors require but slight notice. One is that the court erred in refusing to appoint an interpreter when the defendant was testifying. This is a matter largely resting in the discretion of the trial court, and it does not appear from the answers made by the witness that there was any abuse of such discretion.

Error is also alleged in refusing an instruction as to the

evidence necessary to establish the *corpus delicti.* It is enough, in answer to this objection, to refer to the summary of the testimony we have already given and to note the fact that the court instructed that the evidence must be such as to satisfy the jury beyond a reasonable doubt.

The defense asked one or two instructions, such as this: "The fact that Jacob Jaconi has not been seen since the twenty-eighth day of October, 1904, does not create a presumption of his death." Singling out a single matter and emphasizing it by special instruction as often tends to mislead as to guide a jury. Doubtless the isolated fact that Jaconi had not been seen would not of itself establish the fact of his death. It is only a circumstance which, taken in connection with the other facts in the case, tends to prove the death. It is merely one link in a long chain, and the court is seldom called upon by special instructions to single out any single link in a chain, and affirm either its strength or weakness. *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 433; *Rio Grande Western Ry. Co.* v. *Leak,* 163 U. S. 280, 288.

Objection is made to the instruction in reference to reasonable doubt. This instruction is taken from the charge of Chief Justice Shaw to the jury in *Commonwealth* v. *Webster,* 5 Cush. 295, 320, and that case has been cited with approval by this court. *Miles* v. *United States,* 103 U. S. 304, 312.

These are all the questions which we deem it necessary to notice, and while we should have been glad to have had the assistance of counsel for plaintiff in error, yet we are satisfied from our examination of the record that the defendant was properly convicted, and the judgment is

                                                        *Affirmed.*